**HUMANITARIAN LAW PROJECT, et al. Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF TREASURY, et al. Defendants.**

**No. CV 05 8047 ABC RMCX.**

United States District Court, C.D. California.

April 20, 2007.

Carol A Sobel, Carol A Sobel Law Offices, Santa Monica, CA, David Cole, Center For Constitutional Rights, Georgetown University Law Ctr, Washington, DC, Paul L. Hoffman, Schonbrun DeSimone Seplow Harris and Ho, Venice, CA, Shayana Devendra Kadidal, Visuvanathan Rudrakumaran, Visuvanathan Rudrakumaran Law Offices, New York, NY, Humanitarian Law Project Ralph D. Fertig Hankai Thamil Sangam Nagalingam Jeyalingam World Tamil Coordinating Committee Tamil Wel-

fare & Human Rights Committee, for Plaintiff.

John Russell Tyler, U.S. Department of Justice, Civil Division, Washington, DC, United States Department of the Treasury, John Snow, Alberto Gonzales, United States Department of Justice, Condoleeza Rice, United States Department of State, for Defendants.

### ORDER RE: DEFENDANTS' MOTION FOR RECONSIDERATION

COLLINS, District Judge.

Pending before the Court is Defendants' Motion for Reconsideration in Part of the Court's Order and Judgment ("Motion"), filed on January 30, 3007. Plaintiffs filed an Opposition on February 23, 2007, to which Defendants replied on March 9, 2007. On March 27, 2007, the Court found the Motion appropriate for determination without oral argument, and took the matter under submission. *See* Fed.R.Civ.P. 78; Local Rule 7–15. After consideration of the materials submitted by the parties and the case file, the Court hereby GRANTS Defendants' Motion.

### FACTUAL AND PROCEDURAL BACKGROUND

On November 21, 2006, the Court issued an Order ("Order") granting in part and denying in part Plaintiffs' Motion for Summary Judgment and Defendants' Motion to Dismiss and Cross–Motion for Summary Judgment. *See Humanitarian Law Project v. U.S. Dept. of Treasury*, 463 F.Supp.2d 1049 (C.D.Cal.2006).[1] On January 18, 2007, the Court issued a Judgment (entered on January 24, 2007) and a minute order informing the parties of its view that the November 21, 2006 Order re-

solved all issues in the case, and that the judgment should be made final. However, the Court also allowed any party that disagreed with this view to submit, by January 30, 2007, a brief setting forth any such objection, and identifying any outstanding issues prior to the Court's closing the case.

On January 30, 2007, Defendants filed the instant Motion, seeking reconsideration of two aspects of the Court's Order. First, Defendants contend that the Court should reconsider its decision that the "otherwise associated with" provision of Executive Order 13224 ("EO"), section 1(d)(ii), is unconstitutionally vague on its face and overbroad. Defendants state that on January 26, 2007, in response to the Order, the Office of Foreign Assets Control ("OFAC")[2] issued a new regulation (31 C.F.R. § 594.316) defining "otherwise associated with." Defendants contend that this new regulation cures the unconstitutionality of EO § 1(d)(ii). Thus, Defendants ask the Court to assess the new regulation, find EO § 1(d)(ii) constitutional, and vacate its Order and injunction against enforcing EO § 1(d)(ii) against Plaintiffs.

Second, Defendants seek reconsideration of the Court's decision that the President's designation of twenty-seven individuals and groups as SDGTs in the Annex to the EO was unconstitutional. Defendants contend that the Court did not consider governing law, and thus arrived at an incorrect decision. Plaintiffs oppose each of Defendants' arguments.

### DISCUSSION

Defendants bring their motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e), which states "Any

---

**1.** Because the Order sets forth the background of this matter in detail, herein the Court will only recite background that is relevant to the instant motion.

**2.** OFAC is the Department of Treasury agency charged with implementing the Executive Order.

motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment." Local Rule 7–18 provides that a motion for reconsideration may only be made on the grounds of "(a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision."

## A. The "Otherwise Associated With" Provision

Defendants seek reconsideration of the Court's finding that the "otherwise associated with" provision is unconstitutional on the ground that a change of law occurred after the Order was issued, and that this change of law remedied the constitutional infirmities identified in the Order. Before disputing Defendants' arguments on their merits, Plaintiffs urge the Court to decline to consider the new regulation on a number of grounds, including that the motion is untimely, that Defendants have not demonstrated how their request meets the requirements for reconsideration, and that Defendants' motion amounts to a request to find the Order moot on the unsound ground that Defendants voluntarily changed their illegal conduct.

### 1. Whether Reconsideration is Appropriate

■ First, Plaintiffs contend that Defendants' Motion is untimely because it was filed more than 10 days after the Order was entered, in violation of Federal Rule of Civil Procedure 59(e). Rule 59(e) states, "Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment." How-

ever, although the Order was entered on November 27, 2006, judgment was not entered until January 24, 2007, and Defendants filed their Motion on January 30, 2007. In addition, the Court's January 18, 2007, minute order allowed the parties until January 30, 2007, to object to the judgment. Accordingly, Defendants' motion is timely.

■ Second, the new regulation is a change of law under Local Rule 7–18(b), which Defendants correctly invoke in their motion. Plaintiffs contend, however, that the change of law is equivalent to any defendants' voluntary cessation of illegal conduct, and that ordinarily, such a voluntary cessation does not render moot a case challenging that defendants' conduct. *See Friends of the Earth v. Laidlaw,* 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982)) ("It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'"); *see also City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1983) ("In this case the city's repeal of the objectionable language would not preclude it from reenacting precisely the same provision if the District Court's judgment were vacated.") However, the question before the Court is not whether the Order is moot or whether the new law strips the Court of jurisdiction. Indeed, the reasoning in the Order as issued remains valid as to EO § 1(d)(ii) as it existed at the time the Order was issued. Rather, the question before the Court is whether the law has changed, and, if so, whether the new law passes constitutional muster, thus justifying lifting the injunction. That the law that the Court is reviewing is a regulation, and that the Defendants happen to be the party that issued the regulation, does not negate

the Court's discretion to reconsider an Order where doing so is otherwise appropriate. *See Navajo Nation v. Confederated Tribes and Bands of the Yakama Indian Nation,* 331 F.3d 1041, 1046 (9th Cir.2003) (stating, "Whether or not to grant reconsideration is committed to the sound discretion of the [district] court.") (citations omitted).

For example, in *Freedom to Travel Campaign v. Newcomb,* 82 F.3d 1431 (9th Cir.1996), the Ninth Circuit upheld the District Court's opinion that the term "educational activities" as used in OFAC regulations was not void for vagueness even though the term was undefined. *Freedom to Travel,* 82 F.3d at 1440. The Court also noted, albeit in dicta, that while the appeal was pending, OFAC had issued new regulations defining "educational activities." The Court then considered the newly-issued definition on its merits, and found that "[t]he Treasury Department's recent amendment to the Regulations further cures any vagueness defects." *Id.* at 1441. Similarly, Defendants here issued a new regulation that bears on the matters addressed in the Order, and filed a timely motion for reconsideration. Assessing the new regulation on its merits now is therefore appropriate. Doing so now will also obviate having to do so on remand, should the parties appeal the Order, and would thereby serve judicial economy. *See, e.g., Coral Const. Co. v. King County,* 941 F.2d 910, 928 (9th Cir.1991) (where defendant County modified the ordinance under appellate review, the Ninth Circuit remanded the question to the District Court, stating, "it would be premature to consider the present version of the ordinance ... [w]e leave the question of the amended program's constitutionality-and the corresponding question of the continued necessity for injunctive or declaratory relief-to

the district court for determination on remand.")

In addition, as stated above, the motion does not seek reconsideration on the ground that the intervening change in law renders Plaintiffs' challenge moot. Rather, Defendants contend that the change in law addresses the constitutional infirmities of EO § 1(d)(ii) as it stood previously. Thus, although Defendants ask the Court to vacate its Order and injunction, that is not the remedy the Court would provide if it grants Defendants' motion. Instead, the Court would issue a new order analyzing the new provision, and, if appropriate, lift the injunction. Accordingly, the Court's determination that EO § 1(d)(ii) as it existed when the Order was issued was unconstitutional would remain intact. Should Defendants repeal the new provision and leave the term "otherwise associated with" undefined, they would do so despite the Order, and would render EO § 1(d)(ii) unconstitutional.

Thus, in light of the procedural posture of this case, in which reconsideration was timely sought and the matter is likely to be appealed, the Court exercises its discretion to reconsider the Order.

### 2. Whether 31 C.F.R. § 594.316 Remedies The Vagueness and Overbreadth of EO 13224, § 1(d)(ii)

At stated, Defendants contend that the new regulation remedies the constitutional infirmities identified in the Order. Specifically, the Order found the "otherwise associated with" provision of the EO unconstitutionally vague because the term is not itself susceptible of clear meaning, was not defined by OFAC's implementing regulations, its application was not subject to any identifiable criteria, and its enforcement was therefore subject only to the Government's unfettered discretion.[3]

---

**3.** EO 13224, § 1(d)(ii), the "otherwise associ- ated with" provision, states, in relevant part:

The Order also found the provision unconstitutionally overbroad because it imposed penalties for mere association with SDGTs, and that this overbreadth was substantial in relation to the potentially constitutional scope of the provision. *See Humanitarian Law Project,* 463 F.Supp.2d at 1070–1071.

Defendants now contend that, in direct response to the Order, OFAC revised its regulations implementing and interpreting the EO by adding a new section, 31 C.F.R. § 594.316, to define "otherwise associated with" as it is used in the regulation that corresponds to EO 13224, § 1(d)(ii). Section 594.316 states:

> The term "to be otherwise associated with," as used in [31 C.F.R.] § 594.201(a)(4)(ii), means:
>
> (a) To own or control; or
>
> (b) To attempt, or to conspire with one or more persons, to act for or on behalf of or to provide financial, material, or technological support, or financial or other services, to.

Defendants contend that this newly-issued definition sets forth criteria governing the Secretary of the Treasury's (hereafter, "Secretary") discretion to designate SDGTs that are sufficient to avoid violating the First and Fifth Amendments to the United States Constitution. Plaintiffs disagree, contending that the new regulation is null and void because it exceeds the Secretary's designation authority under section 1(c) of the EO. Plaintiffs further argue that even if the new regulation is not null and void, it does not cure the constitutional infirmities of the "otherwise associated with" provision. The Court agrees with Defendants.

First, the new regulation does not exceed the scope of the Secretary's designation authority. Plaintiffs contend that the regulation expands the Secretary's designation authority under section 1(c) of the EO. Specifically, Plaintiffs claim that while section 1(c) authorizes the designation of persons who are "owned or controlled by" already-designated SDGTs, the new regulation reaches to those who themselves "own or control" SDGTs. This argument is not well-taken.

The new regulation relates to the Secretary's designation authority under EO § 1(d)(ii), the "otherwise associated with" provision, not to section 1(c). As such, the new provision simply defines the operative term of the designation authority delegated to the Secretary in section 1(d)(ii). In addition to this express delegation of authority to designate SDGTs, the Secretary is authorized, under EO § 7, "to take such actions, including promulgation of rules and regulations, and to employ all powers granted to the President by IEEPA and UNPA as may be necessary to carry out the purposes of this order." Thus, the EO also expressly authorizes the Secretary to issue regulations to interpret the designation authority granted therein. As such, OFAC's regulations do not exceed the scope of the Secretary's authority "unless they contradict express statutory language or prove unreasonable." *Consarc Corp. v. Iraqi Ministry,* 27 F.3d 695, 701 (D.C.Cir. 1994). Here, in stating that to be "otherwise associated with" an SDGT means that a person "own[s] or control[s]" an SDGT, or "attempts" or "conspires" to provide "financial, material or technological support" to an SDGT, the regulation does not contradict express statutory language. Indeed, it is clear that such conduct is consistent with being "otherwise associated with." Accordingly, the Secretary has the

---

"[A]ll property and interests in property of the following persons that are in the United States or that hereafter come within the United States, or that hereafter come within the possession or control of United States persons are blocked: ... persons determined by the Secretary of the Treasury ... to be otherwise associated with [an SDGT]."

authority to construe the term "otherwise associated with" as used in EO § 1(d)(ii), and the definition established by 31 C.F.R. § 594.316 is a reasonable construction of that term.

The new provision also remedies the constitutional defects of the "otherwise associated with" provision. The full language of the new provision states that to be "otherwise associated with" means "[t]o own or control" an SDGT, or "[t]o attempt, or to conspire with one or more persons, to act for or on behalf of or to provide financial, material, or technological support, or financial or other services, to" an SDGT. 31 C.F.R. § 594.316. In the Order, the Court analyzed nearly identical language in the EO, and found that it satisfied the Constitution. Specifically, the Court held that the Secretary's authority to designate a person who is "owned or controlled by, or ... act[s] for or on behalf of" other SDGTs (EO § 1(c)), or someone who has provided "financial, material, or technological support for, or financial or other services to or in support of" acts of terrorism or other SDGTs (EO § 1(d)(i)), was not vague and did not violate Fifth Amendment due process requirements. *See Humanitarian Law Project v. U.S. Dept. of Treasury*, 463 F.Supp.2d 1049, 1065–1066 (C.D.Cal.2006). The Court sees no reason to depart from its earlier reasoning, and it applies equally to the same language in the new provision.

The new provision's language varies from that previously analyzed only in that it identifies "to own or control" and "[t]o attempt, or to conspire" as additional bases for designation. Plaintiffs do not challenge the constitutionality of the "to own or control" element of the provision. However, Plaintiffs do claim that the phrase "to attempt, or to conspire" to do anything "on behalf of" can reach "any" associational activity, such as filling out a membership card or communicating with

an SDGT about its interests, and that this language is therefore unconstitutional.

Plaintiffs' conclusory argument does not specify whether they believe that the provision is vague, overbroad, or both. In any case, Plaintiffs' argument is not persuasive. The Court already found that the phrase "on behalf of" was not vague. *See Humanitarian Law Project v. U.S. Dept. of Treasury*, 463 F.Supp.2d at 1065–1066. In addition, unlike the term "otherwise associated with," the phrase "to attempt, or to conspire" does not on its face reach mere association and is not vague on its face. Indeed, to attempt, or to conspire to engage in, an unlawful activity is routinely considered criminal in innumerable contexts. Nor is the provision vague even as to the hypothetical conduct Plaintiffs posit. Filling out a membership card or communicating for informational purposes cannot be construed as "to attempt, or to conspire" to do something illegal on the organization's behalf. Ultimately, the meaning of the phrase "to attempt, or to conspire" is "sufficiently clear so as not to cause persons 'of common intelligence ... necessarily [to] guess at its meaning and [to] differ as to its application.'" *United States v. Wunsch*, 84 F.3d 1110, 1119 (9th Cir.1996) (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)). Thus, "to attempt or to conspire" is not unconstitutionally vague.

 Nor is the phrase "to attempt, or to conspire" unconstitutionally overbroad. A law is overbroad if it punishes a substantial amount of protected conduct judged in relation to the statute's legitimate sweep, until and unless the law is narrowed to remove the threat. *See Virginia v. Hicks*, 539 U.S. 113, 118, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003). Here, "to attempt, or to conspire" does not on its face reach mere association, nor do Plaintiffs provide

any credible scenarios wherein the provision could be employed beyond its legitimate scope, nor can the Court formulate one. Accordingly, the definition of "otherwise associated with" supplied by 31 C.F.R. § 594.316 is sufficiently precise to satisfy the Constitution. Thus, the injunction issued against enforcement of EO 13224, § 1(d)(ii), the "otherwise associated with" provision, is no longer warranted and the injunction is hereby lifted.

## B. The President's Designations in the Annex

■■■ The Order held that the designation of twenty-seven groups and individuals as SDGTs, as reflected in the Annex to the EO, was unconstitutional because no criteria were given for these designations. As part of its holding, the Court also concluded that Plaintiffs had standing to bring this claim. However, the Court has reconsidered its standing analysis, and finds that Plaintiffs lack standing.

In their initial briefing, Defendants appeared to argue that Plaintiffs lacked standing because their fear of being designated an SDGT derived from their association with other groups designated by the Secretary, rather than from their association with groups designated by the President. The Court found this argument unpersuasive because twenty-seven groups had already been designated by the President, and Plaintiffs contended simply that they risk designation by the President for any reason. In its motion for reconsideration, Defendants again contend that Plaintiffs lack standing, and state several bases for this argument. Among these bases, Defendants argue that the President's designations in the Annex do not on their face give rise to First Amendment concerns

because his authority to designate is derived from IEEPA, and the designations were not an exercise of authority pursuant to the criteria described in the body of the EO itself.[4] Because the President's authority under IEEPA does not on its face implicate First Amendment rights, Plaintiffs cannot invoke the relaxed standing analysis for First Amendment claims, and must instead meet the ordinary, and more demanding, standing requirements, which they cannot do. Having reviewed the Government's more extensive analysis, the Court agrees.

The twenty-seven designations reflected in the Annex to EO 13224 were made by the President pursuant to IEEPA, 50 U.S.C. 1701, et. seq. By so designating these groups, the President "blocked" their interests and assets pursuant to IEEPA. The IEEPA authorizes the President to declare a national emergency "to deal with any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States." 50 U.S.C. § 1701(a). Under this authority, the President may take the following actions:

> [I]nvestigate, block during the pendency of an investigation, regulate, direct and compel, nullify, void, prevent or prohibit, any acquisition, holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest by any person, or with respect to any property, subject to the jurisdiction of the United States ....

4. Plaintiffs argue that the Court should deny reconsideration because Defendants did not present these arguments earlier. However, the Court finds that Defendants did preserve these points supporting their standing argument. *See e.g.* Defs' Mem. Supp. Mot. Dismiss & Summ. J. 5:2–25, Defs' Reply Supp. Mot. Dismiss & Summ. J. 22–23, fn. 17 & 18.

50 U.S.C. § 1702(a)(1)(B). Although the President's authority under the IEEPA is broad, he can only exercise this authority to deal with a declared emergency that constitutes an "unusual and extraordinary threat." 50 U.S.C. § 1701(b). The IEEPA also authorizes the President to issue regulations in order to effectively exercise the authority granted him by § 1701 and § 1702 of the IEEPA. This language does not on its face implicate First Amendment associational rights. *See Holy Land Foundation for Relief and Development v. Ashcroft*, 219 F.Supp.2d 57, 80–81 (D.D.C. 2002) (finding that IEEPA does not implicate associational rights). The harm of self-censorship that animates the more lenient First Amendment standing requirement is simply not present here, because the IEEPA does not on its face punish First Amendment activity. Thus, although the "Supreme Court has dispensed with rigid standing requirements [in the First Amendment context] … [and] … has endorsed a 'hold your tongue and challenge now' approach rather than requiring litigants to speak first and take their chances with the consequences," *see Cal. Pro–Life Council*, 328 F.3d at 1094, that liberal standing approach does not apply here.

▮▮▮ "To satisfy the Article III case or controversy requirement, [a plaintiff] must establish, among other things, that it has suffered a constitutionally cognizable injury-in-fact." *Cal. Pro–Life Council, Inc. v. Getman*, 328 F.3d 1088, 1093 (9th Cir. 2003). "[N]either the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies the 'case or controversy' requirement." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir.2000) (en banc).

▮▮▮ Here, Plaintiffs were not designated SDGTs in the Annex. Accordingly, they lack standing to challenge a law unless they can establish a "genuine threat of imminent prosecution" and not merely an "imaginary or speculative fear of prosecution." *Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 773 (9th Cir.2006) (citing *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1121 (9th Cir.1996)) (finding that plaintiffs lacked standing to challenge law regulating firearms sales, in part, because plaintiffs could not identify either general or specific threat of prosecution). In evaluating the genuineness of a claimed threat of prosecution, courts consider three factors: (1) whether the plaintiff has articulated a "concrete plan" to violate the law in question; (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings; and (3) the history of past prosecution or enforcement under the challenged statute. *Sacks*, 466 F.3d at 773.

Based on the second and third factors, Plaintiffs cannot establish an injury-in-fact. They therefore lack standing to challenge the President's designation authority. Plaintiffs have pointed to no instance of their being issued a specific threat or warning that the they would be designated. Plaintiffs refer to the twenty-seven designations made in 2001 in the Annex as sufficiently recent and numerous to argue that their risk of being designated SDGTs by the President is real and immediate. While that might have been sufficient to satisfy First Amendment standing, it is insufficient here. Plaintiffs have not shown, for example, that the President has designated any SDGTs since September 2001. Nor have Plaintiffs argued or shown that any of these designated individuals or organizations are similar to them, or that these SDGTs engaged in conduct similar to Plaintiffs' conduct. Plaintiffs' fear of designation by the President is ultimately based on speculation. Accordingly, Plaintiffs cannot establish a genuine and imminent threat that they will

be designated by the President pursuant to IEEPA. Thus, Plaintiffs lack standing, and the issue is not properly before the Court.

## CONCLUSION

For the foregoing reasons the Court hereby STRIKES the section of the Order entitled "Plaintiffs' Vagueness Challenge to the President's Designation Authority," and VACATES the associated injunction. The Court also hereby lifts the injunction against enforcing Executive Order 13224, § 1(d)(ii) against Plaintiffs.

**IT IS SO ORDERED.**

## FINAL JUDGMENT RE: PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, DEFENDANTS' MOTION TO DISMISS AND CROSS–MOTION FOR SUMMARY JUDGMENT, AND DEFENDANTS' MOTION FOR RECONSIDERATION

This action came before the Court, the Honorable Audrey B. Collins presiding, on Plaintiffs' Motion for Summary Judgment under Fed.R.Civ.P. 56, and on Defendants' Motion to Dismiss Plaintiffs' claims in part under Fed. R. Civ. P 12(b)(1) for lack of subject matter jurisdiction and on Defendants' Cross–Motion for Summary Judgment. The issues presented by these Motions were heard on July 26, 2006. Upon the Court's request, the parties thereafter filed supplemental briefing on whether Plaintiffs had standing to bring one of their challenges. Upon submission of these briefs, an Order was issued by the Court on November 21, 2006. A Judgment was entered on January 24, 2007.

On January 30, 2007, Defendants filed a Motion for Reconsideration in Part of the Court's Order and Judgment. Upon consideration of the parties' briefs, the Court found the matter appropriate for determination without oral argument and took it under submission. On April 20, 2007, the Court issued an Order deciding Defendants' Motion for Reconsideration.

In view of the two Court Orders on the parties' respective motions, it is hereby ORDERED and ADJUDGED that:

This Judgment supercedes the Judgment entered on January 24, 2007. Plaintiffs' Motion for Summary Judgment is DENIED. Defendants' Motion to Dismiss and Cross–Motion for Summary Judgment is GRANTED in part and DENIED in part, and Defendants' Motion for Reconsideration is GRANTED, as follows:

1. The Court finds that Plaintiffs have standing to bring their First Amendment challenge to Executive Order 13224, § 1(d)(ii), the "otherwise associated with" provision. The Court therefore DENIES Defendants' Motion to Dismiss on this ground.

2. The Court finds that Executive Order 13224, § 1(d)(ii), the "otherwise associated with" provision, as it existed prior to the January 26, 2007, issuance of 31 C.F.R. § 594.316, was unconstitutionally vague on its face and overbroad. However, the Court finds, upon reconsideration, that 31 C.F.R. § 594.316 cures the constitutional defects of Executive Order 13224, § 1(d)(ii). Accordingly, the injunction against enforcing Executive Order 13224, § 1(d)(ii) against Plaintiffs is hereby LIFTED.

3. In all other respects, Defendants' Motion to Dismiss and Cross–Motion for Summary Judgment is GRANTED.